**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH ARUANNO, | : | Civil No. 09-1250 (SRC) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| SGT. ALLEN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> JOSEPH ARUANNO, #363
> Special Treatment Unit- Annex
> P.O. Box #CN905
> Avenel, NJ 07001

**CHESLER**, District Judge:

Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, filed a Complaint without prepayment of fees pursuant to 28 U.S.C. § 1915. This Court dismissed the Complaint for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint stating a cognizable claim under 42 U.S.C. § 1983. Plaintiff thereafter filed an Amended Complaint consisting of approximately two typed pages. (Docket Entry #12.) This Court has screened the Amended Complaint for dismissal, as required by 28 U.S.C. § 1915(e)(2)(B), and will dismiss the Amended Complaint because it fails to correct the deficiencies in the Complaint. This Court will give Plaintiff one final opportunity to assert facts stating a cognizable claim under the standard of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). See Gasoline Sales, Inc. v. Aero Oil Co., 39 F. 3d 70, 74 (3d Cir.

1994) (where plaintiff is not seeking to raise claims that were previously unknown but to modify allegations in hopes of remedying factual deficiencies in prior pleadings, "three attempts at a proper pleading is enough").

## I. BACKGROUND

Plaintiff has been civilly committed as a sexually violent predator since 2004. As explained by the Third Circuit Court of Appeals,

> [i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence. As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation. Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey. A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years. The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence. The New Jersey Supreme Court denied certification. State v. Aruanno, 793 A. 2d 716 (N.J. 2002) (table op.).
>
> In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 et seq. . . . .
>
> At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . . Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia. Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence. In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless. According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually

2

> predatory behavior without undergoing treatment for his
> schizophrenia . . . .
>
> Aruanno testified on his own behalf at the hearing. He denied
> committing either the Florida or the New Jersey offense, and
> testified that he believed the State had filed the commitment
> petition in retribution for his decision to go to trial for the New
> Jersey offense, rather than accepting a deal to plead guilty . . . .
>
> The state court found that Aruanno suffered from a mental
> abnormality which created "substantial, significant, severe
> difficulty controlling his sexually violent behavior," and granted
> the State's petition for involuntary commitment. Aruanno
> appealed the order, and the Appellate Division affirmed. In re
> Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App.
> Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the judgment, and remanded the case.[1] See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct., App. Div., April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

In the original Complaint filed in this matter, Plaintiff attempted to assert claims against Sgt. Allen, Paul Lagana, Officers LaRosa, Singletary, Sajack and Cifelli, George Hayman, and Dr. Merrill Main, based on the following facts:

> On March-27-07 I was questioned about a sign that staff found in a
> yard window that said "strike," for which it must be noted that the

---

[1] This Court has not been able to determine through online research the outcome of the remand.

3

residents had just ended a treatment refusal strike. Ironically which I did not participate in and had nothing to do with.

After explaining I knew nothing about the sign I was grabbed by staff and handcuffed at which point I was taken to the court area to be questioned . . . . At one point I was left alone in the interrogation room while I heard them in the next room viewing the film at which point I heard Sgt. Allen state, "look, it was Zalinski, not Aruanno . . . we will lock him up anyway," for which they then proceeded to place me in lock-up, or solitary confinement where excessive physical force was used and where I was subjected to verbal abuse as well . . . .

The entire time I was in lock-up they refused to allow me to have my legal papers, or any property at all, and denied me phone calls to my lawyers or the courts which brings claim one that I was denied access to the courts, my attorneys, etc.

Claim two is the fact that this process denied me due process and equal protection, etc.

Claim three is that when taken to lock-up I was strip searched which amounted to an illegal search. Especially considering they had no probable cause and found nothing illegal.

Claim four is that they used excessive force which caused harm physically and mentally.

And claim five is that because they clearly knew I did not place the sign in the window that their actions were in retaliation for other litigation which amounts to conspiracy.

I submit this complaint as a retaliation complaint because the NJ Department of Corrections constantly threatens my life and retaliates with violence for my filing complaints in reply to the criminal conduct they engage in for which this occurred shortly after I complained about an incident to the NJ DOC that has since become Federal case #08-305 in the District Court of NJ.

Also I was advised to make clear to this court that if it acts on this case without taking proper measures such as ordering the TRO, or Temporary Restraining Order, I request before notifying the

> defendants which includes the Marshal's service, will place my life
> and limb in jeopardy.

(Docket entry #1-2, pp. 1-2)

This Court dismissed the Complaint for failure to plead facts showing that any named defendant violated Plaintiff's constitutional rights as follows:

> Plaintiff, a civilly committed sexually violent predator, brings this Complaint against eight named individuals, designated as a sergeant, officers and a doctor, but he otherwise indicates nothing about who these individuals are, whether they are employed by the State of New Jersey, or whether they are officials at the facility wherein Plaintiff is confined. Using primarily the passive voice, Plaintiff makes conclusory statements about being placed in solitary confinement (for an unspecified period of time beginning March 27, 2007), being denied access to his legal papers and lawyers while housed in solitary confinement (without any elaboration), being the subject of "excessive force" (without describing what force was used or who used it, or providing any factual allegations or context), being retaliated against for bringing a complaint docketed in 08-305 (without providing any factual allegations linking any adverse action to Plaintiff's protected activity, or describing actual injury to the proceeding). As the aforesaid indicates, this Complaint is woefully deficient under Iqbal in that it is chock-full of conclusions and singularly lacking in facts.
>
> Moreover, aside from listing the named individuals as defendants in the caption, with the exception of Sgt. Allen[2], nowhere in Plaintiff's submissions does Plaintiff even mention the defendants by name or show how they were involved in any allegedly unconstitutional conduct. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions,

---

[2] The sole allegation with respect to Allen is that Plaintiff heard him saying "[i]t was Zalinski, not Aruanno . . . we will lock him up anyway." (Docket entry 1-2 at p. 1.) The mere fact that Allen stated that officials will lock Aruanno up, without more, does not satisfy the Rule 8 pleading standard under Iqbal ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for [unconstitutional actions]").

5

> has violated the Constitution." Iqbal, 129 S. Ct. at 1948. Similarly, government officials cannot be found liable under § 1983 as supervisors on the basis of their alleged knowledge and acquiescence in the wrongdoing of subordinates. Id.
>
> Because Plaintiff fails to plead facts showing any constitutional violation by any defendant, Iqbal mandates dismissal of the Complaint for failure to state a claim upon which relief may be granted.

(Docket Entry #9, pp. 6-7) (footnote omitted).

This Court granted Plaintiff leave to file an amended complaint. In response, Plaintiff filed the following as his Amended Complaint:

> Please accept this submission in place of a more formal Amended Complaint pursuant to your order dated 5/4/10. Document #9.
>
> To answer your questions on page 6 the defendants are employed by the state of New Jersey and are officials working at the Civil Commitment Center, Special Treatment Unit, I am housed in. And more specifically are employed by the New Jersey Department of Corrections (DOC) and the New Jersey Department of Human Services (DHS).
>
> Also you mention my issue of being placed in isolation, or solitary confinement without my legal papers; without being able to contact my lawyers; etc., without elaborating but the issue speaks for itself in that in retaliation for my litigation I was sent to isolation w[h]ere I was then denied Due Process under the 14th Amendment, accessing the courts; etc., and where I never saw some of those legal papers I had received from the courts and my lawyers, etc., again.
>
> And for which one of those cases was #08-305 in the District Court of NJ where I "snitched," as they called it, on one of their own. Which was a motivating factor and which links the protected activity.
>
> And as to the "EXCESSIVE FORCE" when I was taken to lock-up, in violation of the 4th Amendment, which includes the legal documents, I was stripped naked, compounding the violation, and

6

was assaulted by ALL the Officers mentioned contrary to the 8th Amendment. And all in retaliation for my legal exercise of my Constitutionally protected rights including the 1st Amendment as well as the 14th, being deprived of liberty and property without Due Process of Law. And which includes being denied the ability to contact my attorneys including those with the Office of the Public Advocate.

On page 7 you state there is no claim as to the TCC unless the action is "EXTREME" for which considering they knew it was not me by reviewing the video tape, then by confronting the person who placed the sign in the window and stated "IF HE TOLD THEM IT WAS ME THEY WOULD RELEASE HIM," which clearly is a deliberate indifference, for which he refused and has addressed it during his therapy sessions here, and has said he will testify to that, as have other witnesses, as long as they are protected from further compounds the physical harm they have inflicted with serious psychological harm as is just common sense. Especially considering this has been addressed to the District Court for almost 10 years now in cases such as #01-789; #04-3066; etc., but these criminals have been permitted to continue such atrocities with impunity, which is also a deliberate indifference, and which has lead [sic] to this case.

And as to your issue of their "NAMES," their uniforms only reflect their last name, anything else is privileged. Though once again ALL named officers were involved in placing me in lock-up and beating me. For which there are MANY more which I will be able to elaborate in more detail once the court assures my protection as you addressed in your first reply to this case.

In closing it is clear that in retaliation for my exercising clearly established constitutionally protected rights . . . , the defendants have harmed me, including physically and mentally, giving me a cognizable claim under 42 U.S.C. § 1983. And for which such merit entitles me to relief which includes immediate relief such as a Temporary Restraining Order (TRO) or a Preliminary Injunction, especially considering at this very moment I am in isolation recovering from the latest assault. Compounded by the fact they were recently warned by NJ Superior Court Judge Philip Freedman. And where recently former Chief Justice Bissell of the District Court acting as Special Master called the actions of the DOC "SADISTIC;" EVIL," etc.... And for which Plaintiff asks the

>       court to reinstate this case and proceed as soon as possible to
>       minimize further harm being inflicted here. Finally, if the court
>       has any more questions or comments please don't hesitate to write
>       me at the new address below.

(Docket Entry #12, pp. 1-2.)

## II. STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

As this Court explained to Plaintiff in dismissing the original Complaint, Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

>       Two working principles underlie our decision in Twombly. First,
>       the tenet that a court must accept as true all of the allegations
>       contained in a complaint is inapplicable to legal conclusions.

---

[3] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

8

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III. DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). Piecing the allegations in the Complaint together with the allegations in the Amended Complaint, Plaintiff appears to claim that he was "stripped naked," "assaulted," and then placed in solitary confinement without his legal papers in retaliation for his history of litigation, specifically Aruanno v. Booker, Civil No. 08-0305 dismissal opinion (JLL) (D.N.J. April 23, 2010), aff'd, 397 Fed. App'x 756 (3d Cir. 2010), and that these events presumably occurred on March 27, 2007, the date referenced in the original Complaint.[4]

---

[4] The reference to Civil No. 08-0305 (JLL) is peculiar and defeats the retaliation claim raised in this case, since Plaintiff did not file the complaint in Civil No. 08-0305 until January
(continued...)

Placement of a civilly committed sexually violent predator in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. App'x 719, 721 (3d Cir. 2007) (applying Sandin v. Conner, 515 U.S. 472 (1995), to segregated confinement of civilly committed sexually violent predators). Since Plaintiff's Amended Complaint does not assert specific facts showing that his confinement in segregated confinement was extreme, the Amended Complaint does not state a § 1983 claim regarding same. Also, Plaintiff complains that he was strip searched on one occasion, but since detention facilities are fraught with serious security dangers, it is established that routine or random strip searches of detained persons do not violate the Fourth Amendment. See Bell v. Wolfish, 441 U.S. 520, 560 (1979); Florence v. Board of Chosen Freeholders of County of Burlington, 621 F. 3d 296 (3d Cir. 2010). As Plaintiff has not alleged anything other than the

---

[4](...continued)
14, 2008, long after the March 27, 2007, events described in this Complaint and Amended Complaint. The case is instructive, however, since Judge Linares dismissed the action, and the Third Circuit affirmed. Plaintiff named officer Booker and several supervisory and administrative officials of the New Jersey Department of Corrections and Department of Human Services as defendants, alleging that in November 2006 "Booker sexually assaulted him in his room and threatened to kill him if he told what had happened. Aruanno averred that he reported the assault, that he was placed in lock-up for three months, and that he was harmed on a daily basis." Aruanno v. Booker, 384 Fed. App'x 69, 69-70 (3d Cir. 2010). On June 10, 2010, the Third Circuit affirmed the order dismissing all defendants except Booker for failure to state a claim, on the ground that "Aruanno's complaint and amended complaint against the DOC and DHS defendants contain conclusory allegations without supporting facts." Id. at 71. On April 23, 2010, Judge Linares dismissed the action as against officer Booker due to Aruanno's refusal, in the absence of injunctive relief, to comply with an order requiring him to respond to discovery demands. See Aruanno v. Booker, 397 Fed. App'x 756, 758 (3d Cir. 2010). On October 14, 2010, the Third Circuit affirmed the order dismissing the amended complaint as to officer Booker on the ground that that "[t]he record supports the District Court's finding that Aruanno's failure to cooperate with discovery was willful." Id. at 758.

11

fact that he was strip searched on one occasion, he has failed to assert a Fourth Amendment claim.

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must assert facts showing that "1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of . . . officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to [take adverse action]." Carter v. McGrady, 292 F. 3d 152, 158 (3d Cir. 2002) (citation omitted). Plaintiff insists that on March 27, 2007, he was placed in solitary confinement and "assaulted" in retaliation for litigating Aruanno v. Booker, Civil No. 08-0305 (JLL), but he has asserted nothing substantiating the conclusion that this litigation was the motivating factor in the allegedly adverse actions of March 27, 2007. Nor could he, since Plaintiff did not file 08-0305 (JLL) until January 14, 2008. See supra at n. 4.

To establish standing for an access to courts claim, plaintiffs must assert "(1) that they suffered an actual injury - that they lost a chance to pursue a nonfrivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)) (internal quotation marks omitted). Plaintiff has asserted no facts in the Amended Complaint showing that he has standing to raise an access to courts claim with respect to the events of March 27, 2007. This claim accordingly will be dismissed.

Finally, Plaintiff asserts that the defendant officers "assaulted" and "beat" him on March 27, 2007. Like the original Complaint, the Amended Complaint makes no allegations of assault

by the supervisory and administrative defendants - Paul Lagana, George Hayman, and Dr. Merrill Main. Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" to state a claim against that defendant under § 1983. Iqbal, 129 S. Ct. 1948. Because the Amended Complaint makes no specific factual allegations of unconstitutional conduct of any sort by Lagana, Hayman and Main, the Amended Complaint will be dismissed with prejudice as against those defendants.

Plaintiff presumably seeks to assert a § 1983 excessive force claim against the five officers he named in the original Complaint (Allen, LaRosa, Singletary, Sajack, Cifelli) in that he asserts that he "was assaulted by ALL the Officers mentioned contrary to the 8th Amendment," and that "ALL named officers were involved in placing me in lock-up and beating me." (Docket Entry #12, pp. 1, 2.) However, Plaintiff does not describe what each (or any) of these defendants did that, in Plaintiff's view, constituted an assault, nor does he describe what, if any, injury Plaintiff suffered, or whether he requested or obtained immediate medical care. Because Plaintiff has not supported his conclusion of an assault with "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" against each defendant-officer, as is required by the Supreme Court's decision in Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted), this Court will dismiss the Amended Complaint against the five officers for failure to state a claim upon which relief may be granted. See Zasquez v. Dwyer, 2010 WL 1619263 at *1 (3d Cir. Apr. 22, 2010) (affirming dismissal of claim where "Vasquez has not pleaded any facts to support is conclusory allegation that [defendant] destroyed the file and did so

willfully"); Mayercheck v. Judges of Pennsylvania Supreme Court, 395 Fed. App'x 839 (3d Cir. 2010) ("Mayerchek's assertions that they conspired with the other judicial defendants are mere conclusory allegations"); Bob v. Kuo, 387 Fed. App'x 134 (3d Cir. 2010) ("There is nothing in the complaint's specific allegations from which we can plausibly infer that the defendants were deliberately indifferent to Bob's serious medical needs"); Laffey v. Plousis, 364 Fed. App'x 791, 794 (3d Cir. 2010) ("Laffey alleged no facts which would establish a causal link between his suspension or demotion and the actions of any individual [defendant]").

Because Plaintiff is a civilly committed pro se litigant, this Court will give him a third and final opportunity to file an amended complaint against one or all of the five officers, which on its face states a cognizable § 1983 claim of excessive force occurring on March 27, 2007. Given that Plaintiff has persisted in making vague allegations and unsubstantiated conclusions, this Court will provide the following additional guidance. A statement of facts is similar to a newspaper article. Facts simply and specifically describe who did what to whom, and when and where, and in what sequence it was done. For example, the Supreme Court explained that "[t]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation - for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint." Twombly, 550 U.S. at 557 (citations and internal quotation marks omitted). If Plaintiff elects to file a second and final amended complaint stating an excessive force claim against one or more of the five officers (Allen, LaRosa, Singletary, Sajack, and Cifelli), this Court suggests that he fill in all the blanks on a § 1983 form complaint, which is designed to elicit facts, list each defendant, describe what each defendant did (and when and

14

where, and in what sequence) in numbered paragraphs in chronological order, and avoid use of vague and general language, such as "assault," "beat," and "abuse." Also the second amended complaint must be complete on its face.[5]

### IV. CONCLUSION

For the reasons set forth above, the Court dismisses the Amended Complaint, without prejudice to the filing of a final amended complaint. The Court will enter an appropriate Order.

**STANLEY R. CHESLER, U.S.D.J.**

Dated: May 31, 2011

---

[5] This Court will not attempt to construct a jigsaw puzzle by piecing together the allegations in several complaints. Once an amended complaint is filed, previous dismissed complaints no longer perform any function in the case and cannot generally be utilized to cure defects in the current amended complaint. See 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1476 (1990). Thus, if Plaintiff elects to file a second amended complaint, he should name the defendants and on the face of the amended complaint, state facts amounting to a claim against each named defendant.

15